**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CASE NO. 21 CR. 35** |
| **JUSTIN JERSEY** | : | |

**GOVERNMENT'S MEMORANDUM
IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through counsel, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that the defendant, Justin Jersey, be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A).   There are no conditions or combination of conditions which will reasonably assure his appearance as required and ensure the safety of any other person and the community.   The Court should therefore order him detained pursuant to 18 U.S.C. § 3142(e).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Factual Background**

1.  **The Attack on the United States Capitol on January 6, 2021.**

The United States Capitol is secured 24 hours a day by U.S. Capitol Police ("USCP"). Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized individuals with appropriate identification are allowed access

inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence, who is also the President of the Senate, was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Michael Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and USCP were present and attempting to keep the crowd away from the U.S. Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the USCP, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and

United States Senate, and Vice President Michael Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During the course of the violent protests, several individuals were armed with weapons including bats, pepper spray, sticks, zip ties, as well as bulletproof vests and anti-tear gas masks. During the course of the violent protest, several law enforcement officers were assaulted and injured by these violent protesters while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside of the Capitol, as well as on the steps outside of the Capitol and the grounds of the Capitol..

**2.   The Defendant's Assault of Metropolitan Police Department Officers**

Metropolitan Police Department ("MPD") Officers A.W., B.M., and C.M. were amongst those MPD officers who were directed to report to the U.S. Capitol to assist the USCP in their duties to maintain the security of the U.S. Capitol on January 6, 2021.   By 4:26 p.m., they had assumed posts in an archway (the "Archway") that provided access to the interior Capitol building from the Lower West Terrace of the building via a passageway (the "Tunnel").   A.W., B.M., and C.M. were each wearing full MPD-issued uniforms; A.W. was also wearing an MPD-issued neon jacket. The officers' approximate location is denoted below by the red circle.



By that time, hundreds of individuals had gathered outside of the Archway, some of whom were throwing and swinging various objects at the group of law enforcement officers.

In a 90-second time period, from approximately 4:27:00 to 4:28:30 p.m., Officers A.W., B.M., and C.M. were brutally assaulted by the rioters, including the defendant, and his co-defendants, Jeffrey Sabol, Peter Stager, Clayton Ray Mullins, Michael Lopatic, Sr., Jack Wade Whitton, Logan Barnhart, and Ronald Colton McAbee.   Before the assaults began, officers had been attempting to expel rioters from the Tunnel and Archway.   Immediately prior to the assaults, the crowd of rioters was crushed against the line of police officers protecting the Archway and several rioters were trampled by the mob.   At least two rioters were in medical distress and a member of the crowd was pleading with Officer A.W. and others for help, as his friend had been trampled by the mob.[1]   That individual was attempting to bring his friend's body forward to law enforcement when the assaults of Officers A.W., B.M., and C.M. began.

At approximately 4:26 p.m., the defendant, Justin Jersey, was standing in the mob of rioters at the top of the steps leading to the Archway, carrying a large, gnarled stick.   Jersey raised the

---

[1]   That individual ultimately died; the cause of death was determined to be amphetamine intoxication.

stick behind his head and moved towards the Archway, as depicted in the images below.



*Government Exhibit 1.1*



*Government Exhibit 1.2*

Jersey then stepped back into the crowd, removed his backpack, and reapproached the line of officers in the Archway.   Before he reached the line of officers, however, Jersey was approached by an individual wearing a cowboy hat, who told Jersey to "knock their masks off." Jersey handed the stick to that individual, and, at approximately 4:27 p.m., sprang at the line of officers.

Officer A.W. was positioned at the front of the Archway.   Jersey grabbed Officer A.W.'s

baton with one hand and reached towards Officer A.W.'s face with his other hand.   Jersey and

Officer A.W. grappled over the baton for several seconds.   Jersey did not succeed in taking Officer

A.W.'s baton, but knocked Officer A.W. to the ground.   This series of events is depicted in the

images below:



*Government Exhibit 2.1*



*Government Exhibit 1.3*



*Government Exhibit 1.4*



*Government Exhibit 1.5[2]*



*Government Exhibit 1.5*

<hr/>

[2] At this point in the sequence, Officer A.W. is supine on the ground in the Archway.   As discussed in more detail below, while A.W. was on the ground, his helmet was knocked off, he was kicked by codefendant Whitton, and he was dragged – by codefendants McAbee and Mullins -- into the mob of rioters gathered on the Lower West Terrace.   A.W. sustained significant injuries, including a laceration to his head that required staples to close.

Jersey then grabbed another baton and used it to strike at other police officers in the Archway, as depicted below:



*Government Exhibit 1.6*



*Government Exhibit 3.1*



*Government Exhibit 1.6*

After these assaultive actions, Jersey fell backwards into the crowd, then stood up and walked down a set of steps that led to the Archway.

As Jersey was swinging the baton, codefendant Whitton kicked at Officer A.W., struck Officer B.M. with a crutch, and – with assistance from codefendants Sabol and Barnhart -- dragged Officer B.M. over Officer A.W., down a set of steps and into the crowd of rioters.   There, rioters struck Officer B.M. with objects, including codefendant Stager, who beat Officer B.M. with a flagpole.   McAbee then grabbed at Officer A.W.'s torso, while Mullins grabbed Officer A.W.'s leg and engaged in a tug-o-war with officers who were trying to pull Officer A.W. back in to the Archway.   Eventually, McAbee pulled Officer A.W. out of the Archway and the two slid down a set of stairs and into the crowd together, with McAbee on top of Officer A.W. and pinning Officer A.W. down.   When Officer C.M. stepped out of the Archway in an attempt to come to the aid of Officers A.W. and B.M., he was assaulted by McAbee, then by codefendant Lopatic.

Jersey's actions after descending from the Archway were captured by photographers on the outside of the Archway, including in a video posted on Storyful's YouTube page (the "Storyful Video"):[3]   As his codefendants and other rioters were hitting, beating, and striking Officers A.W., B.M., and C.M., Jersey was positioned farther down the set of steps leading to the Archway. While the other assaults were occurring, Jersey bent over and picked up Officer A.W.'s helmet,[4] which had fallen down the steps, as depicted below:

---

[3] *Available at* https://youtu.be/aEGthdTzedk.

[4] A.W.'s badge number is visible on the front of the helmet in Government Exhibit 5.



*Government Exhibit 5*



*Government Exhibit 4.1*



*Government Exhibit 4.2*

Officer A.W.'s helmet fell off of Jersey's head several seconds later.[5]

Officer A.W. recalled having his helmet ripped off his head and being stripped of his baton, gas mask (which was later recovered), and MPD-issued cellular phone. As he was dragged into the mob, Officer A.W. was kicked, struck with poles, and stomped on by several individuals. Additionally, Officer A.W. recalled being maced once his mask was ripped off. At some point during the assault, Officer A.W. was able to retrieve his gas mask and one individual prevented the rioters from further assaulting him, allowing him to get on his feet and back to the Archway area. Once Officer A.W. was back in passageway that connected to the Archway, another officer realized Officer A.W. was bleeding from his head. Officer A.W. was subsequently escorted to

---

[5] As noted below, FBI agents recovered A.W.'s helmet from an associate of the defendant on December 2, 2021.

the east side of the Capitol building before being taken to the hospital.   At the hospital, Officer

A.W. was treated for a laceration on his head which required two staples to close.

### 3.   Identification of the Defendant

In photographs and videos of Jersey during the assaults and at other times on January 6,

2021, he is wearing a blue University of Michigan sweatshirt with yellow lettering, a brown jacket

with a hood, and a brown or olive green baseball cap with various insignia on it.   He is also

wearing a red backpack and has distinctive facial hair.

Following the events of January 6, 2021, the FBI posted to the Internet a "Be on the

Lookout" ("BOLO") for the individual depicted below (at the time referred to "AFO-106"):

 

On or about August 25, 2021, the FBI received a tip via electronic submission from a

confidential source of information ("CS-1") identifying AFO-106 as "Justin Jersey."   The FBI

conducted a review of publicly available information pertaining to a Facebook account with the

display name "Justin Jersey" (the "Jersey Account").   The profile picture of the Jersey Account,

the individual depicted in the Michigan Department of Motor Vehicles ("DMV") picture of the

defendant, and AFO-106 all appear the be the same individual.

The Jersey Account stated that it was "in a relationship" with a user of another Facebook account.   That other account contained information that also confirmed Jersey's identity and his participation in the breach of the Capitol on January 6, 2021.   Those posts include:

1.     A series of photographs was posted on January 7, 2021 with the caption, "I was there with Justin Jersey and Trevor Brown![6] Things escalated due to ppl with poor intentions and instigation of law enforcement!"   The photographs appear to depict locations in Washington, D.C., including the U.S. Capitol building and grounds:



---

6 On January 6, 2021, an individual named Trevor Brown was detained by USCP after Brown entered the U.S. Capitol building on that same date.   Brown was subsequently charged in *United States v. Trevor Brown*, 21-mj-498.



2.    A photograph, taken on January 6, 2021, that appears to have been taken at the Smithsonian Gardens and Habitats, Arches of Life sculptures in Washington, D.C., which is located approximately one mile from the U.S. Capitol.   The individual in the photograph is not "tagged," but is wearing the same clothing as AFO-106 – a University of Michigan sweatshirt, a brown jacket, and a baseball cap:



3.      A photograph, sent on January 6, 2021, of an individual wearing the same clothing as AFO-106 and wearing a red backpack, standing in the vicinity of the Washington Monument:



The Jersey Account also contains several videos that appear to have been taken using a cellphone in the vicinity of the Washington Monument.

### 4.  Procedural History

On December 2, 2021, the defendant was arrested in the Eastern District Michigan on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Robin M. Meriweather in connection with an Indictment charging the defendant

with one count of Inflicting Bodily Injury on Certain Officers or Employees and Aiding and Abetting, in violation of 18 U.S.C. §§ 111(a)(1) and (b) and 2 (Count Nine); one count of Assaulting, Resisting, or Impeding Certain Officers or Employees Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b) (Count Thirteen); one count of Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count Fourteen), one count of Knowingly Entering or Remaining in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) (Count Eighteen), one count of Disorderly and Disruptive Conduct in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) (Count Nineteen), one count of   Engaging in Physical Violence any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A) (Count Twenty), and one count of Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Twenty Four).

At the defendant's presentment, also on December 2, 2021, the defendant waived an identity hearing pursuant to Federal Rule of Criminal Procedure 5(c)(3) and consented to the issuance of an order requiring his appearance in the District of Columbia.   The defendant was ordered detained pending the outcome a detention hearing in this district.

The Court set this matter for a detention hearing on Wednesday, December 15, 2021 at 2:00 p.m.

## **ARGUMENT**

The defendant is eligible for detention pursuant to § 3142(f)(1)(A) [Crime of Violence] and 3142(f)(1)(E) [Dangerous Weapon] of the federal bail statute.   There are four factors under §

3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there remain no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community or the defendant's return to the Court.

1. **Nature and Circumstances of the Offenses Charged**

The first factor the Court must consider is the nature and circumstances of the offenses charged, "including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1).   While all of the offenses arising from the January 6, 2021 breach of the Capitol are serious, Chief Judge Howell has set forth a number of considerations to differentiate the severity of the conduct of the hundreds of defendants connected to that event.   See *United States v. Chrestman*, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021).   These considerations include whether a defendant: (1) "has been charged with felony or misdemeanor offenses"; (2) "engaged in prior planning before arriving at the Capitol"; (3) carried or used a dangerous weapon during the riot; (4) "coordinat[ed] with other participants before, during, or after the riot"; or (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct"; and (6) the nature of "the defendant's words and movements during the riot," including whether he "damaged or attempted to damage federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot." *Id.* at *7-8.

The *Chrestman* factors firmly place defendant in the most serious category of offenders. The defendant has been charged with multiple serious felonies, including crimes of violence, that contributed to injuries sustained by police officers who were guarding the Capitol building and grounds on January 6, 2021.   The evidence is clear that, at approximately 4:26 p.m., as officers were attempting to clear rioters from the Archway, the defendant, brandishing a large stick, began to look for an opening to attack.   The defendant then stepped back into the crowd of rioters, removed his backpack –increasing his mobility – and, after handing the stick to another rioter, heeded that rioter's instructions to "knock [the officers'] masks off."   The defendant leapt at the line of officers, grabbing Officer A.W.'s face and baton, and eventually knocking Officer A.W. to the ground, where he was left vulnerable to attack.[7]   This assault by the defendant was, in many ways, one of the instigating sparks in the brutal assaults that occurred over the next few minutes. It was the defendant who pulled Officer A.W. out of the line of officers and who caused him to fall to the ground, prompting other officers to attempt to come to his aid and thereby exposing themselves to further assault.   *See* Exhibits 1, 2.

The defendant then immediately segued from this vicious attack to another assault on law enforcement, this time armed with a dangerous weapon.   Although he did not succeed in wresting Officer A.W.'s baton away, the defendant grabbed another baton and swung it at other officers in the Archway, positioned to Officer A.W.'s right.   *See* Exhibits 1, 3.

Unlike other Capitol Breach defendants, the defendant does not appear to have been wearing protective gear, and certain of his communications indicate that at least one motivation

---

[7] Indeed, Officer A.W.'s baton was stolen by co-defendant Sabol, leaving him without a means of protecting himself, and Officer A.W.'s helmet was knocked from his head, putting him at risk of injury (which risk was unfortunately realized).

behind his travel to Washington D.C. was to document the "Stop the Steal" rally.   However, the

defendant's words in the days leading up to January 6th indicate that he anticipated that violence

would occur.   For example, the defendant exchanged the following Facebook messages on

January 5, 2021:

| | | |
|---|---|---|
| Jersey Account: | I'm going to dc | January 5, 2021 6:44:11 p.m. |
| Account-5: | When? | January 5, 2021 6:56:47 p.m. |
| | *     *     * | |
| Jersey Account: | Leaving in about an hr | January 5, 2021 7:12:39 p.m. |
| | *     *     * | |
| Jersey Account: | We r driving down my buddy Trevor messaged me wanted to go get some good pictures of the inauguration and any protecting or what not | January 5, 2021 7:22:36 p.m. |
| Account-5: | Ok stay safe and take a small concealed club | January 5, 2021 8:46:53 p.m. |
| Account-5: | Love you | January 5, 2021 8:46:59 p.m. |
| Jersey Account: | Yeah I'll have something w me | January 5, 2021 8:57:48 p.m. |
| | *          * | |
| Jersey Account: | I'm going to dc | January 5, 2021 7:52:54 p.m. |
| Jersey Account: | [link to YouTube video ] | January 5, 2021 7:53:09 p.m. |
| Jersey Account: | If anything were to happen tell my daughter I love her | January 5, 2021 7:53:50 p.m. |

While the defendant does not appear to have known his co-defendants prior to January 6,

2021, he acted deliberately and dangerously that day.   He was one of the first assailants to commence what became a prolonged, multi-assailant assault on law enforcement officers, and which resulted in injury to those officers, including serious injuries.   He took his time in selecting when to attack, looking for an opening.   *See* Exhibit 1.   And he removed his backpack in order to increase his mobility prior to commencing the assault.   *See id.*   "[T]hose who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).   This defendant not only assaulted Officer A.W., but after Officer A.W. had been knocked to the ground, the defendant continued his violence, wielding a baton to strike at other officers.

Accordingly, the nature and circumstances of the defendant's offenses weigh strongly in favor of the defendant's pre-trial detention.

## 2.   Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention.   As noted above, the defendant was captured on video and in photographs -- including police body worn cameras and those posted to social media -- participating in the attack of law enforcement officers.   In those videos and photographs and in others, his face is clearly visible and the clothes he is wearing are clearly identifiable.

Additionally, in conjunction with the defendant's arrest on December 2, 2021, the FBI executed a search warrant at this residence.   Among the items recovered were trophies that the defendant had taken from the U.S. Capitol -- an MPD officer's badge and an MPD helmet – and a

jacket that is consistent with the one the defendant wore on January 6, 2021.   The helmet, which was not Officer A.W.'s, was displayed on the wall near the bar in the defendant's home.   Later in the day on December 2, 2021, FBI agents recovered Officer A.W.'s helmet from an associate of the defendant, who informed agents that she had received it from the defendant.

The evidence against this defendant is overwhelmingly strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

### 3.  Defendant's History and Characteristics

A review of the defendant's criminal history reveals that, in connection with a charge of resisting and obstructing a police officer, the defendant twice failed to appear in Michigan State Court (Genesee County).   It also indicates that he has a prior arrest for a weapons offense.   The government does not have details regarding the nature of either; however both are potentially concerning with respect to the defendant's ability to obey the Court's orders, if released, and his willingness to arm himself and/or engage in violence.

### 4.  Danger to the Community and Flight Risk

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. In addition to the defendant's criminal history, the charged offenses involve assaultive conduct aimed to stop the functioning of the United States government.   The defendant used physical force against multiple police officers who were protecting the U.S. Capitol.   And he did so at a time when individuals in the crowd were calling for the police to help them tend to a protestor who was crushed by the mob.   The danger the defendant caused by participating in (and initiating) violent attacks on law enforcement cannot be understated.  Moreover, the defendant

was a spoke in the wheel that caused the historic events of January 6, 2021 and thus, he is a danger to our society and a threat to the peaceful functioning of our community.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that the defendant will comply with court orders and abide by appropriate release conditions.

## **CONCLUSION**

Here, Jersey is subject to detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) [Crime of Violence] and 3142(f)(1)(E) [Dangerous Weapon].   The defendant assaulted multiple police officers.   He grabbed one officer by the face and knocked him to the ground, where he was pulled into a violent mob.   He then swung a baton at other officers.   The evidence shows that the defendant is a danger to the community.

WHEREFORE, the United States respectfully requests that the Court grant the government's motion to detain the defendant pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

*/s/ Benet J. Kearney*
Benet J. Kearney
N.Y. Bar No. 4774048
Assistant United States Attorney
1 Saint Andrew's Plaza
New York, New York 10007
(212) 637 2260
Benet.Kearney@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2021 I caused a copy of the foregoing motion to be served on Alfred Guillaume, Esq. via email.

/s/ *Benet J. Kearney*
Benet J. Kearney
Assistant United States Attorney

- 25 -