**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Case No. 21-035-EGS** |
| **JUSTIN JERSEY** | * | |

\*   \*   \*   \*   \*   \*

**DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT OF PRETRIAL
RELEASE**

Defendant Justin Jersey, by and through counsel, Alfred Guillaume III, respectfully
submits this memorandum in support of his motion that the defendant, Justin Jersey, be released
on conditions pursuant to 18 U.S.C. § 3142(b).  The defendant respectfully requests that this
Honorable Court consider the points and authorities raised in the instant memorandum, as well as
any argument presented at the detention hearing, be considered in the Court's determination
regarding pre-trial release.

## I.     Procedural Background

On December 15, 2021, Mr. Jersey appeared[1] for a detention hearing before this
Honorable Court.  At the conclusion of the hearing, this Honorable Court informed counsel that
additional information about Mr. Jersey's case would assist the court in reaching a determination
about Mr. Jersey's detention status.  Specifically, this Honorable Court inquired as to 1) Mr.
Jersey's actions immediately prior to arriving to the Capitol, and after the alleged assault on law
enforcement; 2) His social media activity before and after the events of January 6, 2021; 3) Mr.

---

[1] Mr. Jersey appeared via Zoom, because he is incarcerated at the Midland County Jail in
Midland, Michigan.

Jersey's activity on social media before and after January 6, 2021; and 4) the detention status of similarly situated co-defendants in this case.

## II.     Relevant Facts

Mr. Jersey traveled to Washington D.C. from Midland, Michigan on or about January 5, 2021.  A friend of Mr. Jersey contacted him approximately twenty-four hours before leaving for Washington and asked whether he would help him drive to Washington D.C.  Mr. Jersey had no prior plans to attend the scheduled events of January 6, 2021, but decided to help his friend drive to Washington.   Mr. Jersey contacted his stepmother on Facebook Messenger to inform her of his travel plans.[2]   Mr. Jersey was not otherwise active on social media before departing for Washington.  Mr. Jersey traveled overnight to Washington, arriving on January 6, 2021. Evidence of Mr. Jersey's presence in Washington on January 6, 2021, appears in numerous social media posts to Facebook.  Mr. Jersey was not actively engaged in social media regarding the events of January 6, 2021, prior to his arrest in this case.  To date, a total of eight persons have been charged in this case, five of whom have been detained pending trial.

## III.     Argument

Mr. Jersey is eligible to be released on conditions pursuant to 18 U.S.C. § 3142(c).  18 U.S.C.§ 3142(c)(1)(A) requires that the judicial officer must impose the least restrictive condition or combination of conditions necessary to "reasonably assure" the defendant's appearance as required and to "reasonably assure" the safety of any person and the community." *See also* 18 U.S.C. § 3142(c)(1)(B).   18 U.S.C. 3142(g) lists the four factors that the Court should consider in determining whether to detain a defendant pending trial: (1) the nature and circumstance of the offenses charged; (2) the weight of the evidence against the defendant; (3)

---

[2] See pg. 21 of Govt. Memorandum in Support of Pretrial Detention

history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  Mr. Jersey asserts that there exist conditions or a combination of conditions which can effectively ensure the safety of any other person and the community and his return for any scheduled court proceeding in this case.

A. **Nature and Circumstance of the Offense**

As previously noted by government counsel, Chief Judge Howell has set forth a number of considerations to differentiate the severity of the conduct of the hundreds of defendants connected to the events of January 6, 2021.[3]  The considerations include whether a defendant: (1) "has been charged with felony or misdemeanor offenses."; (2) engaged in prior planning before arriving at the Capitol"; (3) carried or used a dangerous weapon during the riot; (4) "coordinat[ed] with other participants before, during or after the riot"; or (5) "assumed either a formal or a de-facto leadership role in the assault by encouraging other rioters' misconduct"; and (6) the nature of the defendant's words and movements during the riot, "including whether he "damaged or attempted to damage federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot."  *Id*. at 7-8

Mr. Jersey is charged with serious felony offenses.  However, Mr. Jersey did not engage in any prior planning before arriving to Washington, D.C.  Mr. Jersey communicated with his stepmother via Facebook Messenger to inform her of his travel plans a mere hour before leaving Michigan.  Mr. Jersey had no intention of disrupting or *protesting the proceedings*, the latter of which was his Constitutionally protected right.  As to Mr. Jersey's intentions when he arrived in Washington, he advised his stepmother that he "wanted to get some good pictures of the

---

[3] *See United States v. Chrestman*, 2021 WL 765662 at 7 (D.D.C. Feb 26, 2021).

inauguration and any protecting or what not."[4]  Mr. Jersey did not use the walking stick he was carrying to assault law enforcement officer.   Mr. Jersey does not personally know any of the persons charged in this case, and did not coordinate with any other participants before, during or after the riot.   Mr. Jersey disputes the government version of events, specifically that he was the cause of the larger assault of the officers on the steps of the Capitol that day.  The clash between law enforcement and the protestors was ongoing when Mr. Jersey arrived.  For example, an African American protestor and another protestor were in medical distress, and persons in the crowd can be heard yelling "he's going to die."  Mr. Jersey's exchange with police officers occurs after witnessing the events that led to those persons respective conditions.

Lastly, Mr. Jersey did not attempt to enter the Capitol to disrupt the vote count or otherwise interfere with the certification process.

Mr. Jersey did not participate in any form of assault on law enforcement prior or after the alleged altercation in this case.  Mr. Jersey did not attempt to or enter the Capitol building.  Mr. Jersey recovered an MPD badge and helmet(s) from the ground shortly after leaving the Capitol steps.  Mr. Jersey, separated from his friend that he traveled with to D.C., walked back to the parked car (near the Air and Space Museum) and waited approximately five hours before his friend finally returned, at which point the group immediately left Washington.

Mr. Jersey's Facebook Messenger communication were with his stepmother on January 5, 2021, and are not an indication that he necessarily anticipated violence on January 6, 2021, but rather an acknowledgment that the previous year's street protests were not without violence.  Mr. Jersey did not bring any sort of weapon, protective or tactical gear with him to Washington, nor was he wearing any protective/combat style clothing when he allegedly engaged with police.

---

[4]See *Government's Memorandum in Support of Pretrial Detention* at 21.

Therefore, the nature and circumstances of the offense, including taking the *Chrestman* factors into consideration do not preclude him from pretrial release.

**B.  <u>Weight of the Evidence</u>**

While important to this case, the body camera videos of the police officers do not tell the entire story of what occurred.  With respect to the items recovered at his home on December 2, 2021, Mr. Jersey acknowledges that he exercised poor judgement in bringing an MPD's officers' badge and helmet to his residence.  However, he disputes the government characterization of these items as "trophies".

Although the government has presented evidence that is presumably strong, the weight of the evidence does not necessarily weigh heavily in favor of detention because conditions exist, that would satisfy the Bail Reform Act.

**C.  <u>Defendant's History and Characteristics</u>**

The Pretrial Services Report confirms that Mr. Jersey has no open warrants or cases.  The report does not list any prior convictions but does list three prior contacts with law enforcement. Mr. Jersey has substantial ties to his community, having lived in Michigan his entire life.  Mr. Jersey has two biological children and wants to be involved in their lives.  The United States Probation Office has approved two potential third party custodians that would aid this court in the supervision of Mr. Jersey while in Michigan.  The government has presented no objective evidence that would indicate Mr. Jersey's inability to obey the Court's orders or engage in any violence.  Accordingly, Mr. Jersey should be released pending trial in this case.

**D.  <u>Danger to the Community and Flight Risk</u>**

This offense is *not an example* of one that gives rise to a rebuttable presumption that "no condition or combination of conditions" will (1) reasonably assure the safety of any other person

and the community if the defendant is released or (2) "reasonably assure" the safety of any other person and the community if the defendant is released.  18 U.S.C. § 3142(e)(1)-(3).  The likelihood of Mr. Jersey committing an assault on law enforcement in the future is nonexistent. The unique circumstances of January 6, 2021, are unlikely to re-occur and even if they did, the government has presented no objective evidence that Mr. Jersey would participate in such an event and/or target law enforcement officials.  Moreover, his history clearly indicates that he is not a flight risk and would appear for any proceeding when ordered to do so.

## IV.  <u>Co-Defendant Detention Status</u>

Three of the persons charged in the current indictment have been released pending trial in this case, they are: (1) Michael John Lopatic Sr.; (2) Clayton Ray Mullins and (3) Logan James Barnhart.

Judge Sullivan's Minute Order of April 6, 2021, acknowledges that Michael Lopatic (a) committed acts of violence; (b) stole an MPD officer's body worn camera; and (c) subsequently destroyed it.[5]  A review of the *Government's Response to Defendant's Appeal of Detention Order*[6], reveals that this defendant allegedly was an active user of social media, posting material including but not limited to a call for arms to dispute the results of the 2020 election.

In its *Supplemental Memorandum for Pretrial Detention*[7], the government alleges that Clayton Ray Mullins assaulted multiple law enforcement officers, including being part of a group that initially overran police officers attempting to secure the perimeter of the Capitol.  Mr. Mullins is also alleged to have pulled the leg of MPD officer AW, helping to pull him down into an angry mob.  Mr. Mullins is also alleged to have assaulted MPD officer BM on the steps of the

---

[5] *See ECF 64*
[6] See ECF 58
[7] See ECF 10

Capitol.   Mr. Mullins allegedly possessed a firearm at the time of his arrest during a traffic stop on February 23, 2021.[8]

In the *Government's Memorandum in Support of Pretrial Detention* previously filed in this case, the government alleges that Mr. Barnhart assaulted MPD officer BM, helping to drag him down the stairs of the Capitol into an angry mob, where he was assaulted by multiple persons, including being assaulted with a flagpole by co-defendant Stager.[9]

Mr. Jersey's alleged conduct in this case does not rise to the severity of any of the three persons that have been released.  Moreover, Mr. Jersey was not active on social media before, during or after the events of January 6, 2021.  Mr. Jersey did not post social media messages with inflammatory language disputing the election results of 2020.

## V.    Conclusion

Mr. Jersey is not a danger to the community.  Mr. Jersey does not present a risk of non-appearance at trial or any other proceeding.

WHEREFORE, Mr. Jersey requests that this Honorable Court impose the least restrictive condition or combination of conditions necessary to reasonably assure Mr. Jersey's appearance and to reasonably assure the safety of any person and the community.

Respectfully submitted,

*Alfred Guillaume*
_____
Alfred Guillaume III, #MD0085
Law Offices of Alfred Guillaume III
6305 Ivy Ln. Suite 700
Greenbelt, MD 20770
301-377-2158

---

[8] *Id*. at 16.
[9] Govt. memo at 11

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 19th day of December 2022, a copy of the foregoing Motion was served electronically to all parties of record, including to the Office of the United States Attorney for the District of Columbia.

*Alfred Guillaume*

_____

Alfred Guillaume III