IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No: 21-cr-35(EGS) |
| | : | |
| JUSTIN JERSEY, | : | 18 U.S.C. § 111(a)(1) and (b) |
| | : | |
| Defendant. | : | |
| | : | |

**STATEMENT OF OFFENSE**

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Justin Jersey, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint

session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however,

shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States Houseof Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

***Justin Jersey's Participation in the January 6, 2021, Capitol Riot***

8. On January 6, 2021, the U.S. Capitol Police ("USCP") requested assistance from the Metropolitan Police Department ("MPD") and other law enforcement agencies in the area to protect the U.S. Capitol.  At various times, these officers assumed posts at an archway (the "Archway") that provided access to the interior U.S. Capitol building from the lower west terrace.

9. By approximately 4:20 p.m., hundreds of rioters had gathered, some of whom were throwing and/or swinging various objects at the group of law enforcement officers

positioned at the Archway, including MPD Officers A.W., B.M., and C.M. These officers were wearing full-MPD issued uniforms, including marked helmets, police badges, and duty belts. At approximately 4:26 p.m., the defendant, Justin Jersey, was standing in the crowd of rioters on the steps leading to the Archway and was carrying a large, gnarled stick. Jersey raised the stick behind his head and moved towards the Archway. Jersey eventually gave the stick to another rioter, but at approximately 4:27 p.m., he sprang at the line of officers.

10. At that time, Officer A.W. was positioned towards the opening of the Archway. Jersey charged at Officer A.W., grabbing his face, and knocking Officer A.W. to the ground. Jersey and Officer A.W. then grappled over the officer's baton. Jersey was able to grab another baton and used it to strike other officers in the Archway. While Officer A.W. was lying on the ground of the Archway, co-defendant, Jack Wade Whitton, climbed over a railing and began striking Officer B.M. with a crutch and then kicked Officer A.W., who was still lying on the ground.

11. Whitton then grabbed Officer B.M., first by his baton, then by the helmet and the neck of his ballistic vest, pulled him down, over Officer A.W., and started dragging Officer B.M. down the steps in a prone position. Whitton and co-defendants Jeffrey Sabol and Logan Barnhardt, dragged Officer B.M. fully into the crowd.

12. When Officer B.M. was dragged down the steps into the crowd and Officer B.M. was beaten by co-defendants Peter Stager and Mason Courson with a flagpole and a police baton. As a result of the attack, Officer B.M. sustained physical injuries including bruising and abrasions.

13. Co-defendant Ronald Colton McAbee grabbed Officer A.W.'s torso and pulled Officer A.W. out of the Archway. Co-defendant Clayton Mullins pulled Officer A.W. away

from the Archway and down the steps.

14. Officer C.M. was assaulted while in the Archway by several rioters, including co-defendants McAbee and Michael Lopatic.

15. As his co-defendants and other rioters were hitting, beating, and striking Officers A.W., B.M., and C.M., Jersey was positioned farther down the set of steps leading to the Archway. While the other assaults were occurring, Jersey bent over and picked up Officer A.W.'s helmet, which had fallen down the steps.

16. As a result of the attack, Officer A.W. sustained serious physical injuries including a laceration to his head and bruising and abrasions to his body. After the event, Officer A.W. was hospitalized and treated for the laceration.

17. When Jersey engaged in the conduct against the officers, he knew that the officers were engaged in the performance of official duties as an officer from the MPD who was assisting the USCP.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *Colleen D. Kukowski*
Colleen D. Kukowksi
Assistant United States Attorney

*Benet J. Kearney*
Benet J. Kearney
Assistant United States Attorney

*Matthew Moeder*
Matthew Moeder
Assistant United States Attorney

DEFENDANT'S ACKNOWLEDGMENT

    I, Justin Jersey, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: August 15, 2022           /s/ Justin Jersey   (signed on his behalf by defense counsel)
                                                Justin Jersey
                                                Defendant

ATTORNEY'S ACKNOWLEDGMENT

    I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: August 15, 2022           *Alfred Guillaume*
                                                Alfred Guillaume
                                                Attorney for Defendant